062211Nf

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| STEVE BENNINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C 10-67 EJM |
| v. ) | |
| ) | ORDER |
| KEITH J. WESTERCAMP and APPRAISAL ) | |
| ASSOCIATES COMPANY, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on defendants' resisted Motion to Dismiss, filed January 12, 2011. Granted.

In his Amended Complaint filed January 5, 2011, plaintiff seeks damages for interference with contract (Count 1), conspiracy relating to fraudulent non-disclosure by defendants and non-party Timothy Elliot (Count 2), and violation of the Uniform Standards of Professional Appraisal (Count 3).

As noted in the court's order of December 16, 2010, non-party Continental Terrace Investments LLC (CTI) owned an apartment complex, Continental Terrace, in Cedar Rapids, Iowa. CTI sold the apartment complex to non-party Timothy Elliot for $4,860,000 in 2006. CTI was a Nevada corporation, and is now dissolved. Non-party Liberty Bank financed the Continental Terrace transaction

1

for Elliot.  Defendants appraised the property for Liberty Bank, providing an appraisal report dated December 28, 2005.  The appraisal report stated that the property historically operated at less than a 5% vacancy rate, that the rate increased to approximately 8% in recent years due to economic conditions, and at the time of the report, had an approximate 15% rate attributable to seasonal vacancy.  Plaintiff asserts the sale of Continental Terrace from CTI to Elliot was based upon the 8% vacancy rate.

Plaintiff urges that upon Elliot's request, defendants supplemented the appraisal in March, 2007, recalculating the property value to adjust for a 15% vacancy rate.  Plaintiff asserts Elliot then used the supplemental appraisal in an arbitration proceeding against plaintiff and CTI in California, where Elliot sought damages based upon the lower value of the property with a 15% vacancy rate, rather than an 8% vacancy rate.  Plaintiff asserts that defendant Westercamp testified at the arbitration proceeding, and that his testimony led the arbitrator to believe that 15% was the appropriate vacancy rate for property valuation at the time of the sale.  Plaintiff further urges that Westercamp failed to inform the arbitrator that the December 28, 2005 report concluded an 8% vacancy rate was then a proper rate for property valuation, and that the 15% vacancy rate was there attributed to seasonal fluctuation.  Plaintiff asserts that he "settled the California arbitration due to the legal malpractice of his attorney."  Additionally, he asserts that Westercamp's testimony and supplemental appraisal "led to [his]

2

being forced to settle the arbitration proceeding in a [detrimental manner]." Plaintiff asserts that he was a member/shareholder of CTI, and following its dissolution, he is the only party obligated to pay the California arbitration award. Plaintiff seeks damages upon the following counts:

Count 1: Interference with Contract: defendants' actions caused the sale of the Continental Terrace property between CTI and Elliot to be more expensive for plaintiff and CTI in the amount of $630,000.

Count 2: Conspiracy with Timothy Elliot: defendants and Elliot conspired to give incomplete and fraudulent statements to the arbitrator in California relating to the 15% vacancy rate at the time of sale, not completely disclosing to the arbitrator that defendants had addressed the 15% vacancy rate in the 2005 appraisal report, therein attributing the 15% rate to seasonal fluctuation, and therein concluding that 8% was the proper rate for valuation.

Count 3: Violation of Uniform Standards of Professional Appraisal (USPAP): Defendants' conduct involved multiple violations of the USPAP.

Defendants seek dismissal pursuant to FRCP 12(b)(6). In support, they assert that plaintiff fails to allege the prima facie elements of Count 1, interference with contract. Defendants assert that plaintiff does not allege he was a party to the contract of sale - rather, the contract was between CTI and Elliot. Further, defendants urge that there was no improper interference. Additionally, defendants assert that their actions didn't make plaintiff's

3

performance more expensive or burdensome - but rather, per plaintiff's Amended Complaint, that the malpractice of CTI's attorney caused plaintiff to settle the California arbitration proceeding.

As to Count 2, civil conspiracy, defendants assert that this claim is not actionable in the absence of an underlying tort, and to the extent plaintiff's claim is based upon the underlying tort of fraudulent nondisclosure, plaintiff has failed to plead fraud with sufficient particularity as required by FRCP 9(b). Further, defendants urge that plaintiff has not identified any actions of a co-conspirator for which defendants may be held liable. Specifically, defendants assert that plaintiff failed to allege a duty to disclose information to plaintiff, but instead, plaintiff urges Elliot had a duty to disclose information to the California arbitrator, and failed to do so. Defendants further urge that the claimed tortious interference and violation of USPAP fail to support the claimed civil conspiracy, as both are premised upon the actions of defendants, rather than the actions of a co-conspirator for which defendants could be vicariously liable.

As to Count 3, defendants assert that any claim against them based upon the USPAP extends to nonparty Liberty State Bank, which ordered the appraisal, and not to plaintiff. Moreover, defendants assert that Count 3 seeks economic damages, unrecoverable in tort.

Plaintiff resists, asserting that as to Count 1, upon the dissolution of CTI, he is the real party in interest and now stands in place of CTI, which was a party

to the contract with which defendants are claimed to have interfered. Plaintiff asserts that without Westercamp's testimony, and supplemental appraisal introduced as an exhibit in the arbitration proceeding, there would not have been a "forced settlement" therein.

As to Count 2, plaintiff asserts that the fact of claimed omissions in Westercamp's testimony and supplemental appraisal sufficiently pleads a conspiracy between defendants and Elliot.

As to Count 3, plaintiff asserts that defendants knew the appraisal would affect plaintiff, and that an appraiser has a duty to the public as well as to his client.

In reply, defendants assert that the tort of intentional interference requires that any interference be "improper," and that the claimed improprieties, preparing a supplement to an appraisal, and testifying at a hearing, are not improper, but rather were fair and reasonable under the circumstances and were done for a legitimate business purpose. Defendant asserts that any objections plaintiff had to Westercamp's testimony in the arbitration proceeding should have been addressed through cross-examination.

The standards applied by the court in reviewing a motion to dismiss pursuant to FRCP 12(b)(6) are thoroughly discussed in <u>Whitacre v. Energy Panel Structures, Inc.</u>, 2009 WL 3345733, *1-3 (ND IA 2009).

As to Count 1, the elements of a claim for interference with a contract are as follows: Plaintiff must show (1) that plaintiff had a valid contractual relationship with a third party; (2) the defendant knew of the relationship, (3) the defendant intentionally and improperly interfered with the relationship; (4) the defendant's action caused the third party to breach its contractual relationship with plaintiff, or disrupted the contractual relationship with plaintiff by making performance more burdensome or expensive; and (5) damages. General Elec. Capital Corp. v. Commercial Services Group, Inc., 485 FS2d 1015, 1025 (ND IA 2007)(citations omitted).

The claimed intentional and improper interference was the defendants' preparation of a supplemental appraisal for Elliot recalculating value based upon an adjustment in vacancy rate as requested by Elliot, Westercamp's testifying as to the property's 15% vacancy rate at the time of sale, Westercamp's "omitting from his testimony" that in a previous appraisal report, he attributed the 15% vacancy rate to seasonal fluctuation, and that he there viewed the proper vacancy rate for valuation purposes to be 8%.

It is the court's view that Count 1 of the Amended Complaint claims no more than that an appraiser prepared a supplemental appraisal upon the request of a client, factoring in variables as requested, and testified at a proceeding in a manner claimed to have been unfavorable to plaintiff by omitting reference to an appraisal. In light of the appropriate standards, and assuming without deciding

6

plaintiff has standing as a real party in interest to raise this claim, it is the court's view that plaintiff has failed to state a claim setting forth the element of improper interference. See Hunter v. Board of Trustees of Broadlawns Medical Center, 481 NW2d 510, 518 (Iowa 1992) (discussing factors re: whether conduct "improper"); Dillon v. Ruperto, 786 NW2d 873, *4 (Iowa App. 2010) (same). The motion to dismiss Count 1 shall be granted.

As to Count 2, the tort of fraudulent nondisclosure requires a duty of disclosure between plaintiff and defendant, and a failure to disclose. Schaller Telephone Company v. Golden Sky Systems, Inc., 298 F3d 736, 740 (8th Cir. 2002), citing Wilden Clinic Inc. v. City of Des Moines, 229 NW2d 286, 293 (Iowa 1975). Here, there is no claim of failure to disclose to plaintiff. Additionally, and without relying thereon, the court notes the Schaller court's observation that "we do not believe that Iowa law recognizes a cause of action based upon nondisclosure where the information in question was not "peculiarly" within the knowledge of [defendant]." Schaller, supra, 298 F3d at 741-742. Accordingly, the motion to dismiss shall be granted as to Count 2.

Turning to Count 3, on the facts pled in the Amended Complaint, viewed in light of the appropriate standards, it is the court's view that plaintiff has pled no basis for establishing an appraiser's duty of care to a party for whom neither the appraisal, nor the supplemental appraisal, was performed.

Due to the court's disposition of this matter, defendants' remaining defenses need not be addressed.

It is therefore

ORDERED

Dismissed.

June 22, 2011.

_Edward J. McManus_
Edward J. McManus, Judge
UNITED STATES DISTRICT COURT